IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHARLOTTE M. FERGUSON                )
                                     )
v.                                   )        No. 3:08-0203
                                     )        Judge Trauger/Bryant
TIMOTHY M. GEITHNER, Secretary       )
of the Treasury, in his official capacity  )


To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

**I.        Introduction**

         Plaintiff, proceeding *pro se*, filed this racial discrimination and retaliation lawsuit under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") on February

29, 2008. (Docket Entry No. 1). The case was referred to the undersigned on March 4, 2008 for

all pretrial proceedings, including recommendations on any dispositive motions under 28 U.S.C.

§ 636(b)(1). (Docket Entry Nos. 2, 14).

         Currently pending is Defendant's motion for summary judgment, supported by

memorandum and a statement of undisputed facts. (Docket Entry Nos. 39, 40). Plaintiff has

responded to the motion. (Docket Entry Nos. 44, 45).  Upon consideration of these papers, and

for the reasons given below, the Magistrate Judge recommends that Defendant's motion for

summary judgment be GRANTED.

**II.      Factual Background**

         Plaintiff Charlotte M. Ferguson is employed by the Internal Revenue Service (IRS) as a

Grade 12 Revenue Agent. (Docket Entry No. 40 at ¶ 1). She works in the Bank Secrecy Act

1

program of the IRS, and her post of duty is in Nashville, Tennessee. *Id.* On February 29, 2008, Ms. Ferguson filed this complaint, seeking monetary and injunctive relief under 42 U.S.C. § 2000e-16. (Docket Entry No. 1). Ms. Ferguson asserts that, since 2004, she has been passed over for promotions, suspended, criticized, and subjected to a hostile work environment because of her race and in retaliation for complaints that she has filed with the Equal Employment Opportunity Commission (EEOC). *Id.*

Ms. Ferguson is an African-American female. (Docket Entry No. 1 at ¶ 9). She has worked as a Grade 12 Revenue Agent in the Bank Secrecy Act division of the IRS since October, 2004, where her primary duties are to increase compliance with the anti-money laundering laws through research, analysis, reports, and education. (Docket Entry No. 44 at 6, Exhibit C at 371-74). Ms. Ferguson uses research tools to gather information about potentially fraudulent activity, and sends it to the IRS Criminal Investigation division (hereinafter, "CI") as "fraud leads." *Id.*

Prior to April 2005, Revenue Agents were permitted to forward fraud leads directly to CI. (Docket Entry Nos. 40, 45 at ¶ 4). However, in April 2005, management revised the policy and procedures of the Bank Secrecy Act program, deciding that Revenue Agents would no longer be allowed to forward fraud leads directly to CI. *Id.* These new procedures mandated that all fraud leads be forwarded to the Fraud Technical Advisors (FTA), who would examine and develop the fraud leads before forwarding them to CI. The department's rationale behind this change in policy was to streamline the process, increase CI acceptance, and keep Fraud Technical Advisors "in the loop." (Docket Entry No. 44, Exhibit A; Docket Entry No 1 at ¶ 62). On May 16, 2005, Ms. Ferguson's manager sent an e-mail message specifying the policy and procedure change to

2

Ms. Ferguson and the other Revenue Agents in her group. (Docket Entry Nos. 40, 45 at ¶ 4).

Despite this change in departmental policy, Ms. Ferguson continued to send fraud leads directly to CI, alleging that her leads pertained to urgent issues of national security. (Docket Entry Nos. 40, 45 at ¶ 6). Ms. Ferguson's manager, Anita Teamer, directed Ms. Ferguson both verbally and in writing to cease sending fraud leads directly to CI. *Id.* On October 7, 2005, Ms. Teamer sent an e-mail message to Ms. Ferguson, which stated, "EFFECTIVE TODAY, ABSOLUTELY no more information is to be sent directly to CI..." However, Ms. Ferguson continued to send fraud leads directly to CI. *Id.* Continuing to document Ms. Ferguson's conduct, Ms. Teamer sent another e-mail message on December 6, 2005. *Id.* On January 23, 2006, Ms. Teamer issued a letter of reprimand to Ms. Ferguson for disregarding management's instruction. *Id.* at ¶ 7

On January 31, 2006, after the letter of reprimand, Ms. Ferguson contacted an EEO counselor to file a complaint with the EEOC. (Docket Entry Nos. 40, 45 at ¶ 8). Ms. Ferguson had previously participated in the EEO process by filing six complaints against the IRS. (Docket Entry No. 1 at ¶ 102). Ms. Teamer, an African-American female, had heard rumors about Ms. Ferguson's prior involvement with the EEOC before she became Ms. Ferguson's manager. (Docket Entry Nos. 40, 45 at ¶ 3). Ms. Ferguson asserts that she and Ms. Teamer have had an unfriendly relationship since January 2005. (Docket Entry No. 44 at 13, 14). She claims that the new policy for fraud leads and the resulting reprimand were in direct retaliation for the previous EEOC complaints and for complaints that she has made to Ms. Teamer's immediate supervisor.

After the letter of reprimand, Ms. Ferguson sent two more fraud leads directly to CI. (Docket Entry Nos. 40, 45 at ¶ 9). As a result, her Territory Manager, Mitchell Braverman,

3

proposed to suspend her for failing to follow management's directives. *Id.* Responding to this proposal, Ms. Ferguson did not deny that she had failed to follow procedure. *Id.* at ¶ 10. However, she alleged that the proposal was issued in retaliation for her EEOC complaint. *Id.* Ms. Ferguson asserts that the leads that she was submitting were both urgent and highly sensitive, and that her "managers failed to see the significance of [her] work." (Docket Entry No. 44 at 9, Exhibit J at 37). Effective May 11, 2006, Ms. Ferguson was suspended for five days. (Docket Entry Nos. 40, 45 at ¶ 11).

Ms. Ferguson continued to have a strained relationship with IRS management because of her "fraud lead" activity. On May 31, 2005, Ms. Teamer had informed Ms. Ferguson that she was spending too much time on research for these leads, and that this was taking away from her other duties as a G-12 Revenue Agent. (Docket Entry No. 40 at ¶ 5) Ms. Ferguson, however, disagreed with Ms. Teamer's assessment, urging that the complex cases that she was working on warranted more research. (Docket Entry No. 44 at ¶ 5).

Moreover, from October 2004 until January 2006, Ms. Ferguson's Territory Manager did not place a GS-13 Field Revenue position in the Nashville post of duty, even though he "had the authority" to do so. (Docket Entry Nos. 40, 45 at ¶ 13). Ms. Ferguson's Territory Manager had determined that "workload considerations and agency staffing needs did not indicate that a grade 13 position was needed in Nashville." *Id.* However, Ms. Ferguson asserts that because she was doing GS-13 level work by developing and sending these fraud leads, she should have been promoted to a GS-13 Agent. (Docket Entry No. 44 at 11).

Finally, Ms. Teamer continuously failed to give Ms. Ferguson "credit" in her annual performance evaluations for Ms. Ferguson's several "fraud leads" to the CI department. Ms.

4

Ferguson contends that credit for the fraud leads would have increased her chances of getting promoted. However, Ms. Teamer specified at the administrative hearing that the leads were not specific enough to be productive, and that any notation about Ms. Ferguson's fraud leads "would not have been positive." (Docket Entry Nos. 40, 45 at ¶ 12). According to Cleve Daniels, a Supervisory Criminal Investigator in Nashville, Ms. Ferguson was sending "'raw data" to CI which was "unnecessarily delaying the process." (Docket Entry No. 45, Exhibit G at 214). Mr. Daniels stated that he was "not aware of any lead submitted by [Ms. Ferguson] which proved to have merit." *Id.* In her annual evaluation, Ms. Teamer specified that Ms. Ferguson either met or exceeded the critical elements needed for the GS-12 Agent position, even though she was not following departmental procedures. (Docket Entry No. 44, Exhibit C at 360-66).

In August 2006, the agency announced a GS-13 position in the Nashville post of duty. (Docket Entry Nos. 40, 45 at ¶ 14). After applying for the promotion, Ms. Ferguson made the "best qualified list." However, Ms. Ferguson was ranked the lowest of all of the best qualified candidates with a score of 40.20. *Id*. Gloria Patton, an African-American female with a score of 47.00, was ultimately selected for the position. *Id*. Ms. Ferguson asserts that she was more qualified for the GS-13 position than Gloria Patton because she has had more experience working for the IRS and more experience with fraud leads. *Id.* She alleges that Ms. Teamer's low, retaliatory evaluations caused her not to be selected, and that the Selecting Official, who also knew about the EEOC complaints, failed to promote her out of retaliation. *Id.* at ¶ 15.

Ms. Ferguson claims that all of these actions, taken together, constitute a "continuing pattern of discrimination" since 2004, in which management misrepresented her work, took away the tools that she needed for research, and failed to promote her to a position for which she

5

was qualified. (Docket Entry No. 44). In the wake of the Court's ruling on a motion to dismiss filed May 6, 2008 (Docket Entry Nos. 9, 14), Ms. Ferguson's only remaining claims are allegations of discrimination and retaliation regarding: (1) the criticism of her work on May 31, 2005; (2) receiving the letter of reprimand on January 23, 2006; (3) receiving the five-day suspension effective May 11, 2006; (4) her nonreceipt of credit since February 2004 for forwarding fraud leads to CI; (5) her nonreceipt of a promotion to GS-13 Field Revenue Agent since 2004; and (6) not being selected for the advertised GS-13 position in August 2006. (Docket Entry No. 12)

The Department of Treasury issued a Final Order on December 10, 2007, affirming an Administrative Judge's finding of no discrimination. (Docket Entry No. 1). This Court reviews the aforementioned discrimination and retaliation claims *de novo*. *Cook v. Geren*, 2008 U.S. Dist. LEXIS 20194, at *13 (M.D. Tenn. March 7, 2008) (Trauger, J.).

## III.    Conclusions of Law

### A.    Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). To withstand summary judgment, the nonmoving party "may not rest on its pleadings, but must come forward with [admissible] evidence from which a rational trier of fact could find in its favor." *Jacklyn v. Schering-Plough Healthcare Prods. Sales*

6

*Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). After sufficient time for discovery, summary judgment is appropriate if the nonmoving party has failed to "establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

###    B.    Analysis

Because the Plaintiff has failed to bring forward admissible evidence establishing the existence of elements essential to her hostile work environment, racial discrimination, and retaliation claims, the Magistrate Judge recommends that the Defendant's motion for summary judgment be granted. In her response brief (Docket Entry No. 44), Ms. Ferguson provides "a litany of perceived slights and abuses" by IRS management, and asserts that she "believes" that these abuses were based upon her race and prior EEOC complaints. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000). However, as the party opposing summary judgment, Ms. Ferguson "must set forth specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)). Her subjective beliefs, without affirmative evidence, are insufficient to establish a claim for discrimination as a matter of law. *Sallee v. Tenn. Dep't of Safety,* 2006 U.S. Dist. LEXIS 87306 at *32 (M.D. Tenn. Nov. 29, 2006) (citing *Mitchell*, 964 F.2d at 584). Since the close of discovery on January 30, 2009, Ms. Ferguson has failed to bring forward evidence beyond her pleadings and bare allegations establishing a discriminatory basis for the Defendant's actions. Because she will bear the burden of proving this at trial, summary judgment for the Defendant is appropriate. *Celotex Corp.,* 477 U.S. at 317. The Defendant's motion should be granted because the Plaintiff has

failed to establish the timeliness of certain claims by providing sufficient evidence for equitable tolling under the "continuing violation" theory, and because she cannot in any event establish a *prima facie* case of discrimination or retaliation.

        1.    Timeliness

Ms. Ferguson's claims that IRS management failed to give her credit for fraud leads since 2004, failed to promote her since 2004, and criticized her work in May 2005 are untimely because she cannot establish a "continuing violation." Equitable tolling for these claims is inappropriate.

        a.    Continuing Violation

Before a plaintiff can file a Title VII claim in federal court, she must exhaust the administrative prerequisites in a timely fashion. For federal employees, 29 C.F.R. § 1614.105(a)(1) provides that parties who believe that they have been discriminated against must "initiate contact with [an EEO counselor] within forty-five (45) days of the date of the [discriminatory action]." A plaintiff who fails to contact an EEO counselor within forty-five days is barred from pursuing a remedy for the discriminatory action in federal court. *See* 29 C.F.R. § 1614.107(a)(2) (2009); *Brown v. General Serv. Admin*., 425 U.S. 820, 835 (1976).

However, there are two "narrowly limited exceptions" to this requirement that a discriminatory act be timely grieved, pursuant to the "continuing violation doctrine" which Plaintiff has invoked here. *Kinamore v. EPB Electric Utility,* 2004 U.S. App. LEXIS 2271, at * 21-25 (6th Cir. Feb. 9, 2004) (quoting *Haithcock v. Frank*, 958 F.2d 671, 677-78 (6th Cir. 1992)). One exception applies where "there has been a long-standing and demonstrable policy of discrimination," which ties together a series of related incidents, some of which occurred during

8

the statute of limitations period. The second exception applies "where there is some evidence of *present* discriminatory activity giving rise to a claim of continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated groups." *Id.* (quoting *Dixon v. Anderson*, 928 F.2d 212, 216-17 (6th Cir. 1991). After the Supreme Court's decision in *AMTRAK v. Morgan*, this second exception has been narrowly applied to hostile work environment claims, which involve repeated discriminatory conduct by their very nature. *Id.* (quoting *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003); *see AMTRAK v. Morgan*, 536 U.S. 101, 111-115 (2002); Otherwise, "[e]ach discrete discriminatory act starts a new clock for filing charges," even if the acts are related. *Morgan*, 536 U.S. at 113. Because Ms. Ferguson first contacted an EEO counselor about IRS management's actions on January 31, 2006, her allegations dating back to 2004 and May 2005 are untimely. (Docket Entry Nos. 40, 45 at ¶ 8). Ms. Ferguson cannot revive these stale claims under the "continuing violations doctrine" because she has not alleged facts to support an "over-arching policy of discrimination." Her claim that these remote events comprised a hostile work environment fails as a matter of law.

Ms. Ferguson has not shown that her claims arose out of an "over-arching policy of discrimination" because she only alleges discrimination *in her case*. In the Sixth Circuit, a plaintiff "must demonstrate more than the existence of discriminatory treatment in his case" to support a "discriminatory policy" claim. *Austion v. City of Clarksville*, 2007 U.S. App. LEXIS 18499, at *13 (6th Cir. July 31, 2007) (quoting *Haithcock*, 948 F.2d at 679). Rather, the plaintiff must establish that the employer's "standing operating procedure" included intentional discrimination against the plaintiff's class as a whole. *Id.* (quoting *Sharpe*, 319 F.3d at 269). Ms.

9

Ferguson, however, does not allege that the IRS has a discriminatory policy either against African-Americans or people who have filed complaints with the EEOC[1]. In fact, Ms. Ferguson asserts in her response brief that the discriminatory policy exists "at least as it relates to Plaintiff," and that "the Nashville District office of the IRS has a [policy of discrimination] toward Plaintiff" only. (Docket Entry No. 44 at 24). Because Ms. Ferguson does not even allege a policy of discrimination towards the protected class to which she belongs[2], this "first exception" does not apply.

While the second exception would seem to apply on its face to Ms. Ferguson's hostile work environment claim, this claim also fails for lack of proof. The *Morgan* Court carved out an exception for hostile work environment claims because of their tendency to "build up" over time. *Morgan*, 563 U.S. at 115. In contrast to discrete acts like suspensions and reprimands, events comprising an alleged hostile work environment may occur over a series of years, and count as one single "unlawful employment action." *Id.* Ms. Ferguson alleges that IRS management's failure to offer her a promotion, misrepresentation of her job performance, and "constant

---

[1]Ms. Ferguson does allege that there was one other person whom Anita Teamer "retaliated against." However, this "retaliation" does not seem to be for previous EEOC involvement, but for questioning an assignment and contacting her second and third level supervisors. This allegation does not support any of Ms. Ferguson's claims.

[2]Even if Ms. Ferguson had alleged a discriminatory policy towards her protected class(es) as a whole, she would not have been able to support this claim with sufficient evidence. Ms. Teamer, Ms. Ferguson's manager, was also an African-American female. The employee ultimately selected for the GS-13 position was an African-American female as well. Further, Cleve Daniels, who held a supervisory position with Criminal Investigation, was an African-American male who had participated in the EEOC process before as a witness. Ms. Ferguson provides no evidence to show that the IRS discriminated towards her classes as a whole.

10

harassment"[3] created a hostile work environment continuing well into the limitations period. However, because Ms. Ferguson has failed to provide sufficient evidence to support this "hostile work environment" claim, the continuing violation doctrine does not apply.

Ms. Ferguson simply fails to demonstrate any discriminatory nexus for the Defendant's actions alleged to create a hostile work environment. Under Title VII, a plaintiff establishes a *prima facie* case of a hostile work environment based on race or protected activity by demonstrating that: (1) she is a member of a protected class or engaged in a protected activity; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race or protected activity; and (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment. *Bowman*, 220 F.3d at 462-63.

It is undisputed that Ms. Ferguson is a member of a protected class who engaged in a protected activity by filing complaints with the EEO. However, she cannot demonstrate the remaining *prima facie* elements for a hostile work environment. Assuming *arguendo* that Defendant's actions towards Ms. Ferguson constituted "unwanted harassment," Ms. Ferguson

---

[3]In her response brief, Ms. Ferguson lists the following as "unlawful employment actions" before 2006: "on December 29, 2004, Ms. Teamer refused to change the procedures for submitting fraud leads to [CI] as requested by Plaintiff; (2) on March 29, 2005, Teamer gave the Plaintiff a Counseling Memorandum for Plaintiff's travel to a group meeting in Memphis, TN; (3) on April 14, 2005, Teamer instructed the Plaintiff to have Plaintiff's attorney to write a letter requesting that the Plaintiff be transferred from Teamer's group; (4) on May 31, 2005, Teamer told the Plaintiff that she was spending too much time researching for her fraud leads; (5) on June 20, 2005, Teamer gave Plaintiff her evaluation from the May 31, 2005 Workload Review and Teamer reduced the Plaintiff's ratings in 2 critical elements; (6) on July 20, 2005, Teamer gave the Plaintiff her Mid-Year [sic] evaluation and Teamer reduced the Plaintiff's ratings in 3 critical elements; (7) on December 13, 2005, Teamer removed the Plaintiff [and all other agents in Plaintiff's group] from the IRS tax return database, which Plaintiff used to gather information for the fraud leads; (8) in December 2005 during a meeting with Teamer, the Plaintiff again requested from Teamer that the procedures for submitting fraud leads to the CI Division needed to be changed, but Teamer refused to change the procedures[.]"

11

fails to show that these actions were *based on* her race or her protected status. In the Sixth Circuit, a plaintiff must at least provide evidence to "create an inference" that her protected status was the "motivating impulse" for her coworkers' behavior to support a claim of hostile work environment. *Id.* at 464. However, except for asserting that her managers knew of her protected status and that she believes that this was the motivating factor, Ms. Ferguson provides no such evidence.

Had Plaintiff established her *prima facie* case, the burden would have shifted to Defendant to produce a legitimate, nondiscriminatory reason for its actions, which it then falls to Plaintiff to rebut by establishing the pretextual nature of that reason. In this case, Ms. Ferguson fails to provide sufficient  evidence disputing the Defendant's nondiscriminatory  reasons for the perceived harassment. For example, Defendant claims that it did not create a promotional opportunity for Ms. Ferguson between 2004 and 2006 because a GS-13 position was not needed in Nashville at that time. (Docket Entry No. 40 at ¶ 13). Ms. Ferguson's only response is that management "had the authority" to promote her. (Docket Entry No. 45 at ¶ 13). Moreover, Ms. Teamer claims to have "criticized" Ms. Ferguson for spending too much time researching fraud leads because the research took time away from other important duties. (Docket Entry No. 40 at ¶ 5). Ms. Ferguson's response is that the criticism was not well-informed. (Docket Entry No. 45 at ¶ 5). In fact, Ms. Ferguson's failure to follow managerial instructions by submitting "fraud leads" directly to CI and not requesting leave for time off seems to have been the factor underlying much of the perceived harassment. Ms. Ferguson asserts that the IRS managers "failed to see the significance of [her] work." (Docket Entry No. 44 at 9, Exhibit J at 37). However, Ms. Ferguson's disagreement with management over departmental procedure and her

job performance and duties as a GS-12 Agent is not sufficient to support an inference of discrimination. *Id.* at 464 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (finding that "it is important to distinguish between harassment and discriminatory harassment in order to ensure that Title VII does not become a general civility code"); *see also Vitt v. City of Cincinatti*, 2004 U.S. App. LEXIS 10193, at *9 (6th Cir. May 20, 2004) (affirming summary judgment for the defendant; finding that, although the plaintiff had "an interpersonal conflict" with her "difficult supervisor," and was "physically threatened" and "humiliated," she failed to show *racial* harassment). Because Ms. Ferguson cannot show that the Defendant's action was *based on* her race or EEOC complaints, her timely complaint about events alleged to be a part of a racially hostile work environment fails to justify the inclusion of more remote events under the continuing violation doctrine, and likewise fails to demonstrate a triable claim of discrimination. *See Evans v. Toys R Us Ohio, Inc.*, 2000 US App. LEXIS 14076, *21-24 (6th Cir. June 2, 2000) (finding that the continuing violation doctrine did not apply when the plaintiff failed to establish even one incident that "was motivated by racial animus rather than by his job performance or by some other personal dislike").

b.    Equitable Tolling

Ms. Ferguson urges that equitable tolling nonetheless applies to her untimely claims because Defendant is not prejudiced by the delay. However, because Ms. Ferguson had actual notice of the filing requirements in 2004 and failed to "diligently" pursue her rights in the proposed tolling period, equitable tolling for these claims is inappropriate.

This court considers five factors in determining whether equitable tolling applies to a Title VII claim: "(1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her

13

rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of the plaintiff's ignorance of the time restraint." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not exclusive, however, and the decision to allow equitable tolling is ultimately made on a case-by-case basis. *Id.* (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003)). For Title VII cases, equitable tolling is "available only in compelling cases which justify a departure from established procedures." *Id.* (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989)). The principle should be used "only sparingly." Id. (quoting *Irwin v. Dep't of Vetrans Affairs*, 498 U.S. 89, 96 (1999)).

Ms. Ferguson's actual knowledge of the EEOC complaint process cuts against her argument for equitable tolling. From April 1995 to August 2003, Ms. Ferguson filed six complaints of discrimination with the EEOC. (Docket Entry No. 1 at ¶ 102). Ms. Ferguson does not claim that she was unaware of the filing requirement, and, as a GS-12 Agent, she has had experience in researching and applying the Code of Federal Regulations. (Docket Entry No. 44 at 5). The first, second, and fifth factors above lend no support to the argument for equitable tolling.

Ms. Ferguson has also failed to demonstrate diligence in pursuing her rights during the proposed tolling period, and has not alleged that the delay was due to factors beyond her control. *See Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560-61 (6th Cir. 2000) ("[T]ypically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control"). In fact, Ms. Ferguson admits that she was aware of "unfair treatment" almost a year before she sought EEOC counseling. (Docket Entry No. 44 at 12). Because she was knowledgeable and

14

aware of the EEOC process and capable of filing a timely complaint, the third factor also weighs against equitable tolling.

Finally, the Supreme Court has held that the absence of prejudice to the defendant "is not an independent basis for invoking [equitable tolling]." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Even assuming *arguendo* that "Defendant Agency is not prejudiced," Ms. Ferguson fails to make a "compelling" case for equitable tolling, and her untimely claims should therefore be found time-barred. (Docket Entry No. 44 at 27).

2.      Title VII Claims

Regardless of the validity of Defendant's statute of limitations defense, Ms. Ferguson cannot recover for any of her claims. Just as her hostile work environment claim fails because she has not shown that the Defendant's actions are based on her protected status, Ms. Ferguson also cannot establish the elements of a *prima facie* case for racial discrimination or retaliation. Because Ms. Ferguson will bear the burden of proving these elements at trial, summary judgment for the Defendant is appropriate.

b.      Racial Discrimination Claim

Ms. Ferguson claims that the Defendant racially discriminated against her in violation of Title VII by reprimanding her, suspending her for five days, and subjecting her to disparate treatment in the workplace.

To support a claim of racial discrimination under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) other similarly situated individuals were not subject to the same adverse employment action." *Vitt v. City of Cincinatti*, 2004 U.S. App. LEXIS 10193, at *9 (6th Cir. May 20, 2004) (citing *McDonnell Douglas Corp. v. Green*, 411

15

U.S. 789, 802). As an African-American female, Ms. Ferguson is a member of a protected class. Further, Ms. Ferguson's annual evaluation shows that she either met or exceeded the appropriate skill level for all of the critical job elements of a GS-12 agent. (Docket Entry No. 45, Exhibit C at 360-66). Ms. Ferguson was also subjected to adverse employment action when she was reprimanded and suspended by IRS management. However, because Ms. Ferguson has not provided evidence to show that she was treated differently than other similarly situated individuals, her racial discrimination claim fails as a matter of law.

Because Ms. Ferguson has not identified any other IRS employees who disregarded managerial instructions and were not reprimanded and suspended, she cannot establish a *prima facie* case of racial discrimination. To demonstrate that another employee is "similarly situated" for the purposes of employment discrimination, a plaintiff must show that she is nearly identical to the claimed comparator "in all *relevant* respects." *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). In the disciplinary context, the Sixth Circuit has held that the plaintiff and her proposed comparator must have engaged in acts of "comparable seriousness." *Id.* (quoting *Clayton v. Meijer, Inc*., 281 F.3d 605, 611 (6th Cir. 2002)). If a plaintiff cannot identify another employee who was not disciplined for acts of comparable seriousness, her racial discrimination claim fails as a matter of law. *Id.*

In her response brief, Ms. Ferguson admits that she was the only employee in Ms. Teamer's group that "prepared fraud leads to be sent [directly] to the CI division" in violation of departmental policy. (Docket Entry No. 44 at 16). Noting that Ms. Ferguson's behavior violated IRS procedure, one Criminal Investigator asserted that there were "no other agents who routinely sent fraud leads directly to [Criminal Investigation]." (Docket Entry No. 45, Exhibit G at 214).

16

Ms. Ferguson also fails to provide evidence of any other IRS employees who disregarded *any* managerial instructions and were not similarly disciplined. Because Ms. Ferguson cannot identify any "similarly situated" individuals who were treated differently than her, her racial discrimination claim fails as a matter of law.

Ms. Ferguson's racial discrimination claim based on Defendant's failure to promote her to the GS-13 position similarly fails for lack of proof. To establish a *prima facie* case for a failure to promote claim, the plaintiff must show either that the position remained open or that someone *outside* of her protected class was promoted in her stead. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 789, 802. However, Gloria Patton, another African-American female, was ultimately selected for the GS-13 position. (Docket Entry Nos. 40, 45 at ¶ 14). Ms. Ferguson simply cannot establish a claim of racially discriminatory failure to promote.

c.       Retaliation Claim

Ms. Ferguson also alleges that the Defendant's adverse employment actions, including its failure to promote her to the GS-13 position, were in retaliation for her prior complaints against the IRS with the EEOC.

To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) the defendant knew that she engaged in a protected activity; (3) the defendant subjected her to an adverse employment action; and (4) the adverse employment action was causally connected to the protected activity. *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Ms. Ferguson engaged in a protected activity when she filed discrimination complaints with the EEOC. Further, Ms. Ferguson's manager (Ms. Teamer) and her former territory manager (Mr. Braverman) knew of Ms.

17

Ferguson's EEOC involvement[4].  Assuming, *arguendo*, that Defendant engaged in adverse employment action by reprimanding, suspending, and failing to promote Ms. Ferguson, the third element is also satisfied. However, because Ms. Ferguson is unable to establish the fourth prong of a *prima facie* case, her retaliation claim fails as a matter of law.

Ms. Ferguson cannot establish a causal relationship between Defendant's actions and her prior involvement with the EEOC. To establish a causal connection, a plaintiff must offer sufficient evidence from which an inference could be drawn that but for the plaintiff's protected activity, the adverse employment action would not have been taken. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Although the burden of establishing a causal relationship at this stage is "easily met," there usually must be more than mere temporal proximity of the adverse action to the protected activity. *Id.* Evidence that the defendant treated the plaintiff different from other similarly situated employees and evidence of the circumstances surrounding the adverse employment action are both relevant for determining a causal connection determination. *Id.* (citing *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987)). Here, the only evidence that Ms. Ferguson has of a causal relationship is that Ms. Teamer and Mr. Beaverman both knew of her prior EEOC involvement and either took disciplinary action against her or failed to promote her to the GS-13 position. Ms. Ferguson does not provide evidence of similarly situated employees, or of any other circumstances creating an inference of a causal relationship. Plaintiff has not established a *prima facie* case for retaliation.

        d.       Pretextual Reason for Adverse Employment Actions

---

[4]The Defendant adds that Ms. Ferguson's other former Territory Manager, Mr. Malarkey, did not know about Ms. Ferguson's prior EEOC involvement. However, this does not seem to affect Ms. Ferguson's claims.

18

If Ms. Ferguson were able to establish a *prima facie* case for racial discrimination or retaliation, the burden would shift to the Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802. If Defendant is able to give such a reason, then Ms. Ferguson bears the burden of establishing that the reason is *pretextual* by showing that the reason "(1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action." *Ladd* 552 F.3d at 502 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "Pretext, however, cannot be shown by attacking the decision itself." *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000) (citing *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997) (holding that the soundness of an employment decision may not be challenged as a means of showing pretext)). Because Ms. Ferguson's responses to Defendant's articulated reasons amount to mere disagreements with Defendant's business decisions, Ms. Ferguson has not shown pretext.

(1)      Criticism of Plaintiff's work on May 31, 2005

Defendant's articulated reason for criticizing Ms. Ferguson's time spent researching is that it was an honest assessment of the substance of her work based on the duties of a GS-12 agent. (Docket Entry No. 40 at ¶ 5).As Ms. Teamer articulated during the workload review, Ms. Ferguson's extensive research for "fraud leads" was not an efficient use of her time, especially given the role of Fraud Technical Advisors. *Id.*

Ms. Ferguson has not produced any evidence either to disprove Defendant's reason for the criticism or to show that it is a pretext for race discrimination or a cover-up for a retaliatory motive. Ms. Ferguson asserts that the criticism was misplaced given the magnitude of the cases that she was working on. (Docket Entry No. 45 at ¶ 5). However, absent a showing that Ms.

19

Teamer's criticism was so unreasonable as to call into question its genuineness, Ms. Ferguson may not simply "substitute [her] own business decision for that of the defendant." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 625 (6th Cir. 2006); *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008).

(2)     Issuance of a letter of reprimand on January 23, 2006, and a five
         day suspension effective May 11, 2006

Defendant's articulated reason for issuing a letter of reprimand to Ms. Ferguson and suspending her for five days was that Ms. Ferguson failed to follow managerial instructions and violated departmental procedures. (Docket Entry No. 40 at ¶¶ 6, 9, 10, 11). On November 17 and 30, 2005, Ms. Ferguson made referrals to CI after being instructed not to do so. *Id.* She continued to submit leads directly to CI even after receiving the letter of reprimand. *Id.* Mr. Braverman considered the Agency penalty guide and consulted with labor relations regarding his decision to suspend Ms. Ferguson. (Docket Entry No. 23-1).

Again, Ms. Ferguson's only response to the legitimacy of these reasons is that her managers "failed to see the significance of [her] work." (Docket Entry No. 44 at 9, Exhibit J at 37). Ms. Ferguson asserts that the "fraud leads" that she was working on needed to be sent directly to CI because of their urgency and threat to national security, and the response was disproportionate to her violations. *Id.* Ms. Ferguson also claims that there is a different way of interpreting agency procedures and the meaning of "fraud leads" which would allow her to send the fraud leads directly to CI. (Docket Entry No. 45 at ¶ 12). However, it does not appear the IRS management adopted Ms. Ferguson's alternative interpretations of agency procedure. Ms. Ferguson's responses amount to another disagreement with IRS management about IRS business decisions and procedures, and are not sufficient to demonstrate pretext.

20

(3)     Nonreceipt of credit since February 2004 for forwarding fraud
leads to CI

Defendant's articulated reason not giving Ms. Ferguson "credit" for her CI referrals during performance evaluations was that the leads were not submitted though the proper procedures and they were not well-developed and not deserving of "credit." (Docket Entry No. 40 at ¶ 12). According to Ms. Teamer, the leads that Ms. Ferguson submitted were "very general in nature," and "not to the caliber that [the division] needs in its referrals." (Docket Entry No. 39 at 21). Cleve Daniels of CI asserted that the leads consisted of "raw data" that "unnecessarily delayed the process." (Docket Entry No. 44, Exhibit C at 360-66).

Ms. Ferguson attempts to disprove the factual basis for the Defendant's evaluation of her fraud leads by pointing to general statements by criminal investigators and praise for her fraud leads in the past. However, this response is also unpersuasive. The fact that fraud leads in general may be important to CI and that Ms. Ferguson has submitted good fraud leads in the past does not provide sufficient information for evaluating IRS Management's decision at the time of Ms. Ferguson's evaluations. Again, Ms. Ferguson's response amounts to a disagreement over the substance of management's assessments, not evidence of pretext.

(4)     Nonreceipt of promotion to GS-13 Field Revenue Agent since
2004

Defendant's articulated reason for not creating a GS-13 position for Ms. Ferguson in the Nashville office is that workload and staffing needs did not warrant a grade 13 job in that post of duty. (Docket Entry No. 44 at ¶ 13). According to Mr. Malarkey, the territory manager at the time, there wasn't enough Grade 13 work in Nashville to support a full time Grade 13 Agent. *Id.*

In response, Ms. Ferguson asserts that Mr. Malarkey "had the authority" to open another Grade 13 position, and that she should have been promoted because of all of her Grade 13 work.

21

(Docket Entry No. 45 at ¶ 13). Ms. Ferguson does not refute the factual basis of Defendant's decision. Again, she does not demonstrate pretext.

> (5) Plaintiff's nonselection for a promotion to Grade 13 on September 6, 2006 pursuant to vacancy announcement SO-14-SP1282B

Defendant's articulated reason for not selecting Ms. Ferguson for an open Grade 13 position in September 2006 is that Ms. Ferguson "received the lowest ranking" of all of the Best Qualified candidates, and that she had trouble following managerial instructions in the past. (Docket Entry No. 44 at ¶ 14).

Ms. Ferguson responds that the Selecting Official should have considered her level of experience, which made her more qualified than the applicant chosen. (Docket Entry No. 44 at 24). However, this again, amounts to a disagreement with management as to how the selection process should have taken place and what factors management should have considered. Ms. Ferguson does not attack the genuineness of Mr. Braverman's claims. Therefore, even if Ms. Ferguson had made a *prima facie* case, she has not shown that Defendant's reasons for not hiring her were pretextual. Her discrimination and retaliation claims would fail as a matter of law.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that Defendant's motion for summary judgment be GRANTED.

Any party has ten (10) days from the receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing the objections shall have ten (10) days from receipt of any objections filed in which to file any responses to the objections. Failure to file specific objections within ten (10) days of receipt can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140

22

(1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).


       ENTERED this 30th day of June, 2009.



s/John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE